UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CALVIN CHANEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-03472-MJD-RLY |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Calvin Chaney ("Chaney") applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on March 28, 2014, alleging an onset date of October 20, 2010. [Filing No. 8-2 at 22.] His application was initially denied on July 21, 2014, [Filing No. 8-4 at 6], and upon reconsideration on September 18, 2014, [Filing No. 8-4 at 17]. Administrative Law Judge Belinda J. Brown (the "ALJ") held a hearing on July 12, 2016. [Filing No. 8-2 at 41-66.] The ALJ issued a decision on August 29, 2016, concluding that Chaney was not entitled to receive DIB. [Filing No. 8-2 at 19.] The Appeals Council denied review on July 31, 2017. [Filing No. 8-2 at 2.] On September 28, 2017, Chaney timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.] For the reasons set forth below, the Deputy Commissioner's decision is **AFFIRMED**.

---

[1] On March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Chaney was 51 years of age at the time he applied for DIB. [Filing No. 8-5 at 2.] He has completed at least a high school education and previously worked as a warehouse worker, an injection mold operator, and a punch-press operator. [Filing No. 8-2 at 31-32.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Chaney is not disabled. [Filing No. 8-2 at 33.] The ALJ found as follows:

- Chaney last met the insured status requirement of the Social Security Act on September 30, 2014 (his date last insured ("DLI")).[3] [Filing No. 8-2 at 24.]

- At Step One, Chaney had not engaged in substantial gainful activity[4] from October 20, 2010, the alleged onset date, through his DLI. [Filing No. 8-2 at 24.]

- At Step Two, through the DLI, Chaney had the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, and diabetic neuropathy. [Filing No. 8-2 at 24.]

- At Step Three, through the DLI, Chaney did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 28.]

- After Step Three but before Step Four, through the DLI, Chaney had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except occasionally lift and carry twenty pounds occasionally [*sic*] and ten pounds frequently, frequent use of foot controls bilaterally, and never climb ladders, ropes, or scaffolding." [Filing No. 8-2 at 28.]

- At Step Four, through the DLI, relying on the testimony of the vocational expert ("VE") considering Chaney's RFC, Chaney was incapable of performing his past relevant work as

---

[2] Both parties provided a detailed description of Chaney's medical history and treatment in their briefs. [Filing No. 12; Filing No. 17.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Chaney, the Court will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[3] To receive DIB, the claimant must establish an onset of disability during a period that the insured status requirement was still met. *See* 20 C.F.R. § 404.131.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

a warehouse worker, an injection mold operator, and a punch-press operator. [Filing No. 8-2 at 31-32.]

- At Step Five of the analysis, relying on VE testimony considering Chaney's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Chaney could have performed through the DLI. [Filing No. 8-2 at 32-33.]

## III.
### DISCUSSION

Chaney makes two assertions of error regarding the ALJ's decision, the ALJ failed to: 1) find any limitations from Chaney's severe diabetic neuropathy or provide an adequate explanation of her RFC finding, and 2) provide an adequate explanation of her listing conclusions or obtain a medical opinion as to possible equaling.

**A. RFC**

Chaney makes several arguments generally challenging the ALJ's RFC finding. Chaney asserts that the ALJ did not find any limitations from his severe diabetic neuropathy. [Filing No. 12 at 17.] Chaney further asserts that the "ALJ does a fair job of summarizing the medical record and [his] subjective reports, yet fails to provide +ny rationale for finding very minimal limitations for significant, objectively verified, impairments." [Filing No. 12 at 17.] Chaney contends that the decision fails to provide a function-by-function assessment of the RFC findings with supporting rationale in the form of a narrative, as required by Social Security Ruling ("SSR") 96-8p. [Filing No. 12 at 17-18.] Furthermore, Chaney argues that because the RFC finding did not adequately account for the full limitations supported by the record and the VE provided testimony in response to a hypothetical conveyed in the same language as the eventual RFC finding, the Step Five finding that Chaney could adjust to other work was not supported by substantial evidence. [Filing No. 12 at 18.] Finally, Chaney asserts that the ALJ's decision does not provide a logical bridge necessary to allow meaningful review. [Filing No. 12 at 19.]

SSR 96-8p provides guidance to an ALJ making the critical RFC finding, including the following:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *1; 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the Social Security Administration."). The regulatory functions identified in the ruling include "physical abilities," for example sitting, standing, walking, lifting, carrying, pushing, pulling, and postural functions, etc. 20 C.F.R. § 404.1546(b). The ruling also specifies how the conclusions supporting the finding must be articulated in the written decision:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184 at *7. Furthermore, the "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Based on its precedential interpretation of the regulations and rulings, the Seventh Circuit has similarly established certain standards of articulation that must be followed. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citing *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)) ("We require that an ALJ build an 'accurate and logical bridge from the evidence to [her] conclusion' so that, as a reviewing court,

we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.")

Notably, while Chaney admits that the ALJ did a good job of summarizing the objective evidence and allegations of subjective symptoms, Chaney does not identify any evidence of record that was ignored, other than contending that the ALJ did not include any limitations due to his diabetic neuropathy. Chaney further fails to articulate for the Court any specific functional limitation supported by the record that the ALJ failed to include in her RFC assessment.

With regard to the ALJ's RFC assessment, the Court is able to trace the ALJ's logic. The ALJ found that diabetic neuropathy was a severe impairment. [Filing No. 8-2 at 24.] The ALJ summarized the relevant objective medical evidence prior to Chaney's DLI in support of her Step Two findings. [Filing No. 8-2 at 24-26]; *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"). The ALJ added additional limitations to the state agency assessments, including reducing: 1) the exertional level from medium to light with a corresponding reduction in lifting and carrying to twenty pounds occasionally and ten pounds frequently, 2) use of bilateral foot controls to frequently, and 3) postural abilities to climb ladders, ropes, and scaffolds to never. [Filing No. 8-2 at 28]; *See* [Filing No. 8-3 at 24-26 (the latest state agency consultant review assessed an RFC for a range of medium work lifting and carrying twenty-five to fifty pounds, with unlimited use of foot controls, and occasional climbing of ladders, ropes, and scaffolds)]. The ALJ explained that the reductions in exertional level and postural activities were due to a consideration of precipitating factors of Chaney's back pain. [Filing No. 8-2 at 29.] The ALJ further explained that additional restrictions were added "to account for findings related to neuropathy and loss of sensation."

7

[Filing No. 8-2 at 31.] The ALJ did not simply limit Chaney to an exertional level, but rather considered specific functional limitations supported by the record.

While Chaney asserts generally that the objective evidence supports greater limitations, the Court is not able to find any persuasive basis to support the proposition. The ALJ noted the absence of any statement from a treating source. [Filing No. 8-2 at 30.] In fact, the Court observes that no medical source has assessed any additional physical restrictions. While aspects of the objective and clinical findings do seem to support possible greater restrictions, the ALJ noted findings that were less supportive, including that Chaney presented to a consultative examination "with the ability to stand and walk without the need for an assistive device," [Filing No. 8-2 at 25], and a later examination was mostly "unremarkable" with "normal range of motion in the cervical and lumbar spine," [Filing No. 8-2 at 26.] Absent a supportive opinion interpreting the medical evidence, the Court is not able to reweigh the conflicting evidence under the standard of review.

The only two sources that have alleged additional physical restrictions are Chaney himself and his wife. Chaney does not present evidence of even subjective symptom allegations along with his RFC argument. Chaney does cite to some of his subjective symptoms in support of his later listing argument that the record establishes an inability to ambulate effectively. [Filing No. 12 at 22.] Chaney also does not directly challenge the ALJ's conclusion that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." [Filing No. 8-2 at 29.] Regardless, the ALJ adequately explained why she gave little probative weight to Chaney's wife's functional report, observing that the report described considerably more restrictive functional abilities than Chaney's own functional report filled out on the same date. [Filing No. 8-2 at 30-31.] Furthermore, the ALJ adequately explained

how she discredited Chaney's statements, including her conclusion that Chaney's daily activities were not limited to the extent one would expect, citing statements that Chaney could assist in household chores, walk a quarter mile to the store, and walk to a gas station. [Filing No. 8-2 at 30.] Accordingly, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

### B. Step Three, Listings of Impairments

Chaney argues that the ALJ failed to provide more than a perfunctory analysis explaining her conclusion that Chaney's impairments did not meet or equal Listings 1.04 and 11.14 of the listed impairments. [Filing No. 12 at 20.] Chaney also argues that the ALJ is not qualified to make the medical determination as to whether the evidence of record equals a listing in severity and that the ALJ failed to take advantage of available expert guidance at the hearing to assist in that determination. [Filing No. 12 at 20.] Chaney further contends that there was sufficient evidence of record to support that Listing 1.04(C) was met or equaled and that the ALJ did not consider the full regulatory definition of a required element of that listing, an inability to ambulate effectively. [Filing No. 12 at 21-24.]

In order to meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if he has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis

9

of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision. *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)).

The ALJ mentioned Listings 1.04 (Disorders of the Spine) and 11.14 (Peripheral Neuropathy) specifically, but provided only a conclusory analysis, at least in the section of the decision dedicated to Step Three, that neither listing was met or equaled. [Filing No. 8-2 at 28.] However, as noted above the ALJ provided a comprehensive discussion of the objective medical evidence in the preceding section explaining her Step Two findings. [Filing No. 8-2 at 24-26.] Moreover, the ALJ provided additional insight relevant to the listing analysis in explaining her RFC findings, which the Court will discuss in more detail below.

Most notably, the Court finds the timing of the state agency consultant's review important to the analysis of the sufficiency of the ALJ's Step Three findings. SSR 96-6p provides that:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the [Deputy] Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.
>
> When an administrative law judge or the Appeals Council finds that an individual[']s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

SSR 96-6p (S.S.A. July 2, 1996), 1996 WL 374180 at *3. Here, J. Sands, M.D., completed an SSA-831 form on September 18, 2014, [Filing No. 8-3 at 28], after reviewing the evidence of record through Exhibit 19F, [Filing No. 8-3 at 17-21]. The Court observes that all of the evidence added to the record after Dr. Sands's review, contained in Exhibits 20F through 23F, post-dates Chaney's DLI. [Filing No. 8-1 at 3.] Furthermore, there is no contrary medical opinion of record suggesting that a listing was met or equaled. As in *Scheck*, where the claimant was required in a DIB only claim to establish disability prior to his DLI, the state agency consultant had given an opinion on the evidence through the DLI, and the record contains no contrary medical opinion, the Court finds the state agency consultant opinion to provide substantial evidentiary support for the ALJ's Step Three finding. *See Scheck*, 357 F.3d at 699-701; *see also Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987) (an opinion can be conclusive, particularly when it is based on the entire medical record or the entirety of the relevant medical record). On these facts, the ALJ was not required to resubmit the updated evidence following Chaney's DLI for further expert review.

Furthermore, the Court does not find evidence supporting that either Listing 1.04 or Listing 11.14 was credibly met when reading the ALJ's decision as a whole. Chaney contends that the evidence either met or equaled Listing 1.04(C). [Filing No. 12 at 21-22.] One of the requirements necessary to satisfy Listing 1.04(C) is that the spinal impairment results "in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04(C). The referenced regulatory sections further explains:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

> [ . . . ]
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b). As noted above, the ALJ did not find Chaney's alleged subjective symptoms entirely consistent with the record, specifically noting that Chaney "further alleges that he is able to walk a limited two to three minutes, but stated he had the ability to engage in household chores and walk approximately one-quarter of a mile to a store." [Filing No. 8-2 at 30.] There is also no evidence that any ambulatory aid has been necessary at any point in the record. Chaney does not specifically challenge the ALJ's subjective symptom evaluation and the ALJ was not required to simply credit his alleged subjective symptoms. While the regulatory definition is not the clearest example of statutory construction, the Court is able to trace the ALJ's logic that she did not find the degree of limitation with ambulation necessary to satisfy the listing.

While Chaney does not articulate for the Court specifically how Listing 11.14 might have been met based on the evidence of record, the listing applicable at the time of the decision required "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.14. The internally referenced regulation requires "[s]ignificant and persistent disorganization of motor function in *two extremities*, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt.

404, Subpt. P., App. 1, 11.04(B) (emphasis added). To begin with, the ALJ noted with regard to Chaney's neuropathy that "allegations of bilateral symptoms are inconsistent with objective test results finding only abnormalities on the right." [Filing No. 8-2 at 30.] Moreover, the listing references section 11.00C, which describes in relevant part that the "assessment of impairment depends on the degree of interference with locomotion." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(C). Once again, the ALJ did not find the degree of interference with locomotion necessary to satisfy the listing to be credibly supported by the record. The Court does not find that conclusion to lack substantial evidentiary support.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Chaney to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment will issue accordingly.

SO ORDERED.

Dated: 10 JUL 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov